1

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF MINNESOTA

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

4    UNITED STATES OF AMERICA,

5                        PLAINTIFF,

6                                      CRIMINAL FILE NO.
       VS.                              08-30 (MJD/SRN)
7

8    Donald Ray Tate,
9
                        DEFENDANT.
10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

12
                        SENTENCING
13

14                     AUGUST 10, 2009

15
                        10:00 A.M.
16

17   THE ABOVE-ENTITLED MATTER came on for hearing before

18   The Honorable Michael J. Davis, Chief Judge in United States

19   District Court.

20

21

22
                  REPORTED BY:  SHEILA G. SMITH
23                Court Reporter/Notary Public

24

25

1    APPEARANCES:

2

3    FOR THE PLAINTIFF:

4                         MICHAEL DEES, Assistant U.S. Attorney,

5    U.S. Attorney's Office, 600 U.S. Courthouse, 300 South

6    Fourth Street, Minneapolis, Minnesota 55415.

7

8    FOR THE DEFENDANT:

9                         RICHARD KYLE and KRISTINE BOYLAN,

10   Attorneys at Law.

11

12                              *   *   *   *

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                 THE CLERK:  USA versus Donald Ray Tate,

2       Criminal Case Number 08-cr-30.

3                 Counsel, please state your appearances.

4                 MR. DEES:  Good morning, Your Honor.

5       Michael Dees, Assistant United States Attorney, on

6       behalf of the Government.

7                 MR. KYLE:  Richard Kyle and Kristine Boylan

8       on behalf of the Defendant, who is present.

9                 THE COURT:  Good morning.  Step forward for

10      sentencing.

11                Counsel, have you had an opportunity to

12      review the pre-sentence investigation report in this

13      matter?

14                MR. DEES:  The Government has, Your Honor,

15      and has no news objections or corrections other than

16      what was stated prior about the aggravated robbery in

17      the first degree instead of the second degree.

18                MR. KYLE:  Your Honor, the defense has

19      submitted all of our objections and corrections, and

20      I have no further objections or corrections this

21      morning.

22                THE COURT:  All right.  The court will make

23      the following changes in the pre-sentence

24      investigation report:

25                The footnote on page 1 is stricken and will
```

1    be taken out.

2              On page 3, paragraph 14, the two-level

3    enhancement that was given because of the allegation

4    that the gun was stolen, that will be taken out, so

5    the total offense level is 24, still armed career

6    criminal to be 31.

7              And then on page 6, paragraph 24, I was

8    informed by the probation officer that he was

9    convicted of or adjudicated as an extended juvenile

10   jurisdiction for aggravated robbery in the first

11   degree, not the second degree.

12             Those are the changes to be made in the

13   pre-sentence investigation report, and the Court will

14   adopt all the other paragraphs as its own, and those

15   paragraphs as amended by the Court.

16             Counsel, have you had an opportunity to

17   review the advisory guideline calculations as

18   prepared for the Court by the probation officer?

19             MR. KYLE:  Yes, we have, Your Honor.

20             THE COURT:  Any objections to those

21   calculations.

22             MR. KYLE:  No objections beyond what we

23   have already submitted, Your Honor.

24             MR. DEES:  No objections.

25             THE COURT:  Total offense level of 33,

1      armed career criminal, criminal history points of 9,

2      category 4, imprisonment range of 188 to 235 months,

3      supervised release of three to five years, fine range

4      of 17,500 to 175,000, and special assessment of $100.

5              Mr. Kyle, do you wish to be heard?

6              MR. KYLE:  Yes, Your Honor, just briefly.

7      I understand the Court has made a decision on the

8      armed career criminal.  Just for the record,

9      obviously we've already submitted and both sides have

10     briefed the issue; it is our position, though, that

11     these prior drug offenses that Mr. Tate had pled

12     guilty to really do represent a single, you know,

13     episode, and I think it's too bad that the -- I

14     understand the Eighth Circuit case law that the

15     Government has cited for these kinds of matters, but

16     I think if you -- you know, continually when we have

17     cases like this where we've got undercover deals by

18     the same police department, same informant, same

19     officer on couple different days, the same defendant,

20     they really are more like a continuing episode.  It's

21     these police, really, that are dictating the terms

22     more than the individual defendant.

23              I'm not going to say anything more than

24     that.  We've briefed the subject, and I believe

25     that's an issue that we can take up later.

1           As far as the sentence, Your Honor, we

2     would ask that -- Mr. Tate's guideline range is

3     obviously higher than the 15-year mandatory minimum,

4     but we would ask that the Court depart and vary its

5     sentence downward to 15 years.  It's not a big

6     departure, it's guidelines of 188 to 235, but it's a

7     huge amount of time for a young man like this.

8           And Mr. Tate's made mistakes.  He's made

9     mistakes very recently.  But, you know, they're young

10    man mistakes, and he obviously deserves time, but 15

11    years is just an incredible amount of time for a

12    fellow who is as young, as capable as my client, and

13    I would ask that the Court, you know, vary its

14    sentence downward.  It would only be going eight

15    months below, you know, what's the low end of his

16    guideline.

17          He has family that are supportive of him

18    that are here today -- his mother, his aunt,

19    girlfriends, you know, they are supportive, they want

20    to see him again; and he wants to see his kids again,

21    you know, before they become adults.

22          So we would ask the Court to vary its

23    sentence downward just slightly to give him a 15-year

24    minimum.

25          THE COURT:  Donald Ray Tate, do you have

1    anything to say to the Court?  You have an absolute

2    right to talk to me and tell me anything you want to

3    tell me about yourself or this offense or anything

4    else you wish to tell me before I sentence you.

5            THE DEFENDANT:  Yes, Your Honor.  All I

6    really have to say is, you know, I want to apologize

7    for the inconvenience of my family, the Court,

8    myself, and I put a lot of people through a lot of

9    things right now.

10           And, you know, like my attorney said, you

11   know, I made a lot of mistakes, you know, bad

12   choices, and I just ask that, you know, I get a

13   little leniency and don't be punished too harsh so I

14   can, you know, be back out there and still be a part

15   of my kids' life and have my own life myself.

16           And that's all I have to say, Your Honor.

17           THE COURT:  Can you tell me why you didn't

18   show up when you were supposed to show up?

19           THE DEFENDANT:  I was scared, Your Honor.

20           THE COURT:  You destroyed your electronic

21   monitoring device.  That's $385.  Do you know that?

22           THE DEFENDANT:  No, I didn't.

23           THE COURT:  You didn't destroy it?

24           THE DEFENDANT:  Well, I destroyed it, but I

25   didn't know how much it cost.

1            THE COURT:  Now, what were you scared

2       about?

3            THE DEFENDANT:  The time.  I was facing a

4       lot of time.

5            THE COURT:  Well, you just increased your

6       time.  I don't know how you can think you can come in

7       here and destroy a monitor and escape and we have to

8       send out the marshals when I allowed you to be in a

9       halfway house.  I could have had you locked up a long

10      time ago.  That's ...

11           Well, I don't know how you can think I can

12      give you less time for escaping and having the

13      marshals go hunt for you than I would have been able

14      to if you had shown up on time.

15           (Pause.)

16           Anything else you want to say?

17           THE DEFENDANT:  No, Your Honor.

18           THE COURT:  All right.

19           Mr. Dees?

20           MR. DEES:  First, Your Honor, in reference

21      to the issue of whether Mr. Tate is a career

22      criminal, I'll rely on my sentencing pleading, and I

23      have a certified copy of Government's Exhibit 1 which

24      was referenced in that pleading.

25           As to Mr. Tate's sentence, Mr. Tate now

1    stands before you convicted of being a felon in

2    possession of a firearm.  Here is a man who has been

3    given multiple, many opportunities.  It's not about

4    mistakes; it's about failing to take advantage of

5    those opportunities that have been bestowed on

6    Mr. Tate.

7            He started his criminal career as an adult

8    at the age of 16 with an aggravated robbery.  That

9    aggravated robbery was a violent robbery, but

10   Mr. Tate was given a chance.  He was given an EJJ

11   sentence, he was sent to Glen Mills, he was given

12   extensive programming.

13           THE COURT:  We will put in the record that

14   he shot his partner in crime, shot the victim twice.

15   I don't know why he wasn't certified as an adult, but

16   they didn't.

17           Let's get the record straight:  It wasn't

18   just, "Give me your wallet or you'll get hurt;" the

19   victim was shot twice.

20           MR. DEES:  Exactly, Your Honor.  But he was

21   still given, nonetheless, a chance on EJJ status.

22   Four months after being released from Glen Mills

23   Mr. Tate found himself involved in an extensive drug

24   transaction behind Jackson Elementary School in St.

25   Paul where the participants of this business actually

1    took over homes of elderly people right across from

2    the elementary school to sell the drugs.

3         Mr. Tate was not taken into custody; he was

4    allowed to get his life together.  His EJJ sentence

5    was not revoked until April of the next year.

6         And as the Court is keenly aware, Mr. Tate,

7    after having his EJJ sentence revoked, was not sent

8    directly to adult prison; he was given actually

9    workhouse time, which is unheard of as far as the EJJ

10    sentencing.  The way the law works is once you

11    violate, you go directly to adult prison.  Mr. Tate

12    was given another chance.

13         Unfortunately for Mr. Tate, he eventually

14    was sent to prison based on the four felonies that he

15    picked up during the drug business.  He was released

16    in May of '07.  Five months later he finds himself

17    with another offense, which is what we stand before

18    you today on.

19         Mr. Tate was given a chance by you.  As you

20    had told Mr. Tate, he was given a chance.  He could

21    have been sitting waiting for sentencing; he wasn't.

22         Mr. Tate has been given multiple chances.

23    Now it's time for an adult sentence.  He is no longer

24    a young man.  If he commits adult crime, he has to do

25    the time.  Unfortunately for Mr. Tate, a guideline

1    sentence is what his criminal history dictates in

2    this matter.

3         THE COURT:  On December 17, 2008 the

4    Defendant was found guilty by jury of a one-count

5    indictment -- he was found guilty of felon in

6    possession of a firearm on October the 4th, 2007, in

7    violation of Title 18, United States Code, Section

8    922(g)1 and 924(e)1, a Class A felony.

9         (Pause.)

10        Mr. Tate, it's unfortunate that it happens

11   so many times that nothing happens to individuals in

12   the state system or they're given slaps on the hand,

13   and finally, when they come to Federal Court --

14        At first people realize, "Oh, this is state

15   court; I'll get probation," or, "I'll do a year in

16   the workhouse," or something of that sort; and then

17   when their attorneys come and tell you, "Wait a

18   minute, you're looking at 15 as a minimum sentence,"

19   "You're lying.  That can't be.  I've never served

20   more than a year or two in prison.  You're telling me

21   I'm going to stay in jail for 15 years?"  And it

22   becomes very difficult for individuals to come to

23   grips with that.

24        But it's impossible for the families to

25   understand, because they love you and they want you

1    home and you have children, and it becomes one of,

2    "Oh, the judge is being mean," or, "The prosecutor's

3    being mean."

4            That's not the case.  The United States

5    Government has made these statutes for a reason, for

6    those individuals where the state system cannot

7    handle or will not handle violent offenders.

8            We've had a trial in this matter.  The jury

9    was found you guilty.  We've had extensive motions on

10   this matter on whether or not you should get a new

11   trial.

12           The Court has heard all those motions and

13   reviewed all the records of the arresting officer to

14   see if there was anything that should be turned over

15   to the Defendant that would be usable on a new trial

16   to impeach his credibility, and there was not.  So

17   we're here.

18           (Pause.)

19           I took a chance on you in letting you out

20   and letting you at the halfway house on electronic

21   monitoring, and, well, there was a chance that -- I

22   knew that there was a possibility that you would

23   violate that.  That's a possibility with everybody,

24   so it's just not you.  Everyone gets scared, but it's

25   how they react to it.

1          You're 25 years of age, and when you add 25

2     and 15, you get to 40, don't you?  So the vast

3     majority of your life will have been spent in prison.

4          Do I want that?  No.  Is that the life you

5     made?  Yes.  The Court cannot go down below the

6     mandatory minimum sentence on violent offense, or any

7     mandatory minimum.  There is legislation being

8     offered in Congress to possibly go under a mandatory

9     minimum, but I am certain that none of those criteria

10     will be met by you.  But that will be reviewed at a

11     different time and a different place.

12          But at this point I -- even with you

13     running, even with you causing the loss of $385 to

14     our electronic monitoring --

15          Do you know what that means?  That's one

16     less person that I can let out.  That means that

17     person has to sit in jail.  Do you think they like

18     that?

19          You're going to be -- I can tell you the

20     process that you're going to have while you're in

21     prison.  The first five to seven years you're going

22     to be angry.  You're going to be disruptive in

23     prison.  This is the normal course of young adults

24     being locked up for long periods of time.

25          And then you'll get older and wiser and

1     figure out that that's not going to get you anywhere,

2     that you're going to have to figure out what kind of

3     job skills you're going to get while you're in prison

4     and work for your betterment, because the fewer times

5     that you're locked up and have your good time taken

6     away, the quicker you'll get out of prison.

7           I'm just telling you what the normal course

8     is.  There's hundreds and hundreds of young adults

9     that I have seen come through just like you.  I visit

10    the prisons, and I see what happens, so I'm in touch

11    with reality and understanding 15 years is a long

12    period of time.  In 15 years I'll probably be dead.

13          So it does not give me any pleasure sending

14    you away for that amount of time.

15          (Pause.)

16          The Court has found that you are a career

17    criminal, career armed criminal, and will sentence as

18    such.

19          You are sentenced to the care and custody

20    of the Bureau of Prisons for a period of 180 months.

21    No fine is imposed.  Restitution in the amount of

22    $385 is due and payable to the United States District

23    Court for the District of Minnesota -- and that will

24    be payable to the Clerk of Court -- for the

25    destruction of the electronic monitor transmitter

1    that you destroyed while you were on release.

2              You are sentenced to a term of five years

3    supervised release.  The mandatory conditions are

4    applicable.  The Defendant must report to the United

5    States Probation Office in the district in which the

6    defendant is released within 72 hours of release from

7    the custody of the Bureau of Prisons.

8              Next, Defendant shall not commit any

9    crimes, federal, state or local.

10             Next, Defendant shall not illegally possess

11   a controlled substance, shall refrain from any

12   unlawful use of a controlled substance; the Defendant

13   shall submit to one drug test within 15 days his

14   release of prison and thereafter as determined by the

15   Court.

16             And the Court will make note that when you

17   were found by the marshals, you had a small amount of

18   marijuana on your person.  That was destroyed, and

19   the City of Apple Valley was not going to charge you

20   with that minor possession.

21             Forfeiture of the Smith and Wesson Model

22   66.357 magnum caliber revolver, Serial Number 47K3397

23   will take place.  That gun will be forfeited and

24   turned over to the United States Government.

25             Next, the Defendant shall abide by the

1  standard conditions of supervised release that have

2  been adopted by the Court, including the following

3  special conditions:

4      One, the Defendant shall participate in a

5  program for substance abuse as approved by the

6  probation officer.  That program may include testing,

7  an in-patient or out-patient treatment counseling or

8  support group.

9      Further, the Defendant shall contribute to

10  the cost of such treatment as determined by the

11  Probation Office, the co-payment program not to

12  exceed the total cost of treatment.

13     Next, if not employed at a regular lawful

14  occupation as deemed appropriate by the probation

15  officer, the Defendant may be required to perform up

16  to 20 hours of community service per week until

17  employed.

18     The Defendant may also participate in

19  training, counseling, daily job search or other

20  employment-related activities as directed by the

21  probation officer.

22     Next, the Defendant shall submit his

23  person, residence, office, vehicle or other area

24  under the Defendant's control to a search conducted

25  by the United States probation officer or supervised

1    designee at a reasonable time in a reasonable manner

2    based upon reasonable suspicion of contraband or

3    evidence of a supervision violation.

4              The Defendant shall warn any other

5    residents or third parties that the premises and

6    areas in the Defendant's control may be subject to

7    searches pursuant to this condition.

8              Next, the Defendant shall not associate

9    with any member, prospect, or associate member of the

10   Gangsters Disciples gang or any other gang.  If the

11   Defendant is found to be in the company of such

12   individuals while wearing clothing, colors, or

13   insignia of the Gangster Disciples gang or any other

14   gang, the Court will assume this association was for

15   the purpose of participating in gang activities.

16             Finally, there's a $100 special assessment

17   payable to the Crime Victims Fund which is required

18   by statute to be paid immediately.

19             Sir, if you feel that the Court has not

20   followed the law in your sentencing or if you feel

21   that the Court or the jury did not appropriately find

22   you guilty at trial, you have a right to appeal your

23   sentence and your trial to the Eighth Circuit Court

24   of Appeals, which sits in St. Louis.

25             Mr. Kyle and Ms. Boylan will be your

1    attorneys on that appeal.  That appeal has to be

2    noticed to the Court of Appeals within ten days of

3    today's date.  And because there's so many issues

4    involving your case, I will order that Mr. Kyle file

5    that Notice of Appeal so your rights are preserved.

6            Anything further for the defense?

7            MR. KYLE:  Your Honor, we will file that

8    Notice of Appeal.  The only other thing, I'd ask the

9    Court to make a recommendation to the Bureau of

10   Prisons that Mr. Tate be incarcerated as close to the

11   Twin Cities or Minnesota as possible.  He has a lot

12   of family here.

13           THE COURT:  I will recommend that he be

14   housed in Sandstone, but more than likely he'll go to

15   Oxford, Wisconsin, because of the violence in his

16   background.

17           MR. KYLE:  That's my understanding.

18           THE COURT:  Anything further for the

19   Government?

20           MR. DEES:  Nothing for the United States.

21           THE COURT:  All right.  Mr. Tate, do you

22   understand your sentence?

23           THE DEFENDANT:  Yes.

24           THE COURT:  You understand that's a

25   mandatory minimum sentence that I've given you of 15

1     years?  What that means is that no argument by your
2     attorney and nothing the Government could do could
3     allow the Court to go below the 15 years.  Do you
4     understand that?
5                THE DEFENDANT:  Yes.
6                THE COURT:  All right.  And it's a sad day.
7                MR. KYLE:  Your Honor, I just have one more
8     thing.  Mr. Tate does have some children that are out
9     in the hallway; I'm wondering if it's possible before
10    he's taken away by the marshals to at least see those
11    kids.
12                THE COURT:  He can have a seat.  The
13    marshals will be right by, and they can be in the
14    first row, so he can talk to them for a few minutes
15    before he goes off to prison.
16                MR. KYLE:  Thank you.
17                THE COURT:  And he can talk to is his
18    mother here.
19                MR. KYLE:  His mother is here as well.
20                THE COURT:  Girlfriends here, too?  You can
21    talk to them as well.
22                All right.  Anything further?
23                MR. KYLE:  Nothing further.
24                THE CLERK:  All rise.  Court is now in
25    recess.

1    (Proceedings concluded at 10:30 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   STATE OF MINNESOTA)
                      ) ss:          REPORTER'S CERTIFICATE
 2   COUNTY OF HENNEPIN)

 3

 4       I, SHEILA G. SMITH, do hereby certify that the

 5   foregoing is a correct transcript from the record of

 6   proceedings in the above-entitled matter.

 7

 8   s/Sheila G. Smith                  Date: February 5, 2010
     Sheila G. Smith
 9   Court Reporter/Notary Public

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```